## MERCHANTS' PROTECTIVE ASS'N v. POPPER.

### No. 3642.   Decided February 8, 1922.   (204 Pac. 107.)

1. BANKRUPTCY—CHARGE AS TO PRIOR DEBTS AS CONSIDERATION FOR PROMISE TO PAY AFTER DISCHARGE IN BANKRUPTCY HELD CORRECT. In suit on a note given for debts from which defendant had been released in bankruptcy proceedings, a charge that the original debts constituted sufficient consideration for a new promise to pay, and that a new promise to pay a discharged debt must be clear and unequivocal to pay the particular debts which were discharged in bankruptcy, and that the debts covered by any promise must be identified as those that were discharged in bankruptcy proceedings, was correct.

2. BANKRUPTCY—PROMISE TO PAY DEBTS FROM WHICH PROMISOR HAD BEEN DISCHARGED IN BANKRUPTCY MAY BE ORAL. A promise to pay debts from which the promisor has been discharged in bankruptcy proceedings is enforceable though made orally, and no particular form is necessary.

3. BANKRUPTCY—ACCEPTANCE OF NEW PROMISE MAY BE IMPLIED. In action on note given for debts which defendant claimed had been discharged by his bankruptcy, an instruction that plaintiff could not recover unless "at the time of the execution of the note plaintiff expressly and unequivocally agreed to accept and defendant expressly and unequivocally agreed to make and deliver the note in settlement of or as a new promise to pay those specific claims, and no others," was error, for acceptance may be implied, as from the benefit of the promise to the promisee, or from his acting on the promise, such as his suing thereon.

4. BANKRUPTCY—IN ACTION ON NOTE GIVEN FOR CLAIMS WHICH DEFENDANT CLAIMED WERE DISCHARGED IN BANKRUPTCY, INSTRUCTION HELD ERRONEOUS. In such action an instruction that plaintiff could not recover unless "the note correctly states the amount then unpaid upon those claims, and is not in excess of the amount unpaid upon those specific claims at the date of said note," was error, for, if defendant promised to pay the claims, the mere fact that in adding them together a mistake was made as to their aggregate amount would not vitiate the promise; the material thing being the identity, and not the correct addition, of the claims.

5. BANKRUPTCY—QUESTION AS TO WHAT CLAIMS WERE INCLUDED IN A NOTE GIVEN BY A DISCHARGED BANKRUPT TO PAY DEBTS IN-

CURRED PRIOR TO THE BANKRUPTCY SHOULD HAVE BEEN LEFT TO
THE JURY. . In a suit on a note given by a discharged bankrupt
to pay debts from which he had been discharged in bankruptcy,
where there was evidence that there were claims included in
the discharge in bankruptcy proceedings other than those in-
cluded in the note, and that there were other claims not in-
cluded in the bankruptcy proceedings, the question of what
claims were included in the note should have been left to the
jury.

6.  BILLS AND NOTES—WHERE SOME EVIDENCE OF FRAUD IN PROCUR-
ING A NOTE WAS INTRODUCED, THE QUESTION SHOULD HAVE BEEN
LEFT TO THE JURY. In a suit on a note, defended on the grounds
of fraud and duress, where some evidence of fraud was intro-
duced, the question of fraud should have been left to the jury.

7.  PLEADING—ALLEGATIONS OF FRAUD IN OBTAINING NOTE HELD SUF-
FICIENT TO ADMIT EVIDENCE THEREOF. In a suit on a note, de-
fended on grounds of fraud and duress, allegations in the an-
swer that the plaintiff unlawfully garnished defendant's wages,
and made false and fraudulent misrepresentations which defend-
ant believed, and on which he relied, and executed the note in
question and that the execution and delivery were obtained by
means of undue influence and duress, and that the note was
without any consideration, was sufficiently specific to admit evi-
dence of fraud.

Appeal from District Court, Third District, Salt Lake
County; *Wm. M. McCrea*, Judge.

Action by the Merchants' Protective Association against
M. Popper. From judgment for defendant, plaintiff appeals.

REVERSED AND REMANDED, with directions.

*Chris. Mathison*, of Salt Lake City, for appellant.

*Clawson & Elsmore*, of Salt Lake City, for respondent.

FRICK, J.

The plaintiff commenced this action against the defendant
to recover judgment upon a promissory note. The complaint

is in the usual form in such actions, alleging a payment, however, of $6.50 and praying judgment for the remainder due on the note, with attorney's fees and interest as provided therein.

The defendant, in his answer, "admits the execution and delivery of the note sued upon, and that he has paid $6.50 to the plaintiff." After denying "every other allegation of plaintiff's complaint," the defendant averred that on June 1, 1916, he was indebted in the sum of $450, from which debts he was "discharged in bankruptcy," and that "among which debts so discharged was a Nord Clothing Company debt, a T. H. Nott debt, and an Electa Hemingway debt." The defendant then sets forth the facts respecting certain garnishment proceedings in which his wages were "unlawfully and unjustly" garnished by plaintiff, and that in connection therewith certain false and fraudulent statements and representations, stating them in detail, were made by plaintiff to the defendant, which statements defendant believed, and upon which he relied; "that the defendant, so relying upon and believing said false statements and misrepresentations, executed the note sued upon." The defendant further averred "that the execution and delivery of said note was obtained by the plaintiff and its said agent by means of undue influence and duress." As a further defense the defendant averred "that the said note sued upon was issued without any consideration whatever."

In view of the conclusions reached, we have set forth the averments of the answer in general terms only.

The plaintiff produced in evidence the note in suit, which we have set forth in full:

"$211.64.

"Salt Lake City, Utah, April 1, 1920.

"After date, for value received, I promise to pay to the order of Merchants' Protective Ass'n two hundred eleven & 64/100 dollars negotiable and payable at the general office of the Merchants' Protective Association, Salt Lake City, Utah, without defalcation or discount, with 12 per cent. interest per annum, from date until paid, both before and after judgment or decree, and if legal proceedings be begun for collection of this note, the undersigned agrees to pay a

reasonable attorney's fee. If $6.50 is paid now and $3.50 on 4/18/20 and $2.50 on the 3d and $2.50 on the 18th of each month hereafter until $134.53 has been paid it is to be in full. Otherwise no discount to be allowed."

[Signed]   M. Popper."

The case proceeded to trial to a jury upon the foregoing issues.

At the trial the plaintiff, after introducing the note, also produced evidence which tended to show that the consideration for which the note in suit was given was as follows: The Hemingway claim, which amounted to $11; the Nord Clothing Company claim for $104.98; the T. H. Nott claim for $12.35, and $6.50 costs in the garnishment proceedings— all of which claims, omitting the amounts, including the $6.50, are referred to in defendant's answer; that the several claims aggregated the sum of $134.83, and that the balance of the note was made up of accrued interest; that the condition in the note waiving interest was written therein if the defendant would pay the amounts as stated in the condition; that the several claims referred to had been discharged in the bankruptcy proceedings referred to in defendant's answer, but that he had agreed to pay said claims notwithstanding his discharge, and to evidence his promise had executed the note in question.

The defendant admitted the execution of the note, but denied that he had agreed to pay the claims referred to, or any of them. He denied that he executed the note for the purposes stated by the plaintiff. He testified that he was induced to execute the note by reason of the statements and misrepresentations of the plaintiff. The defendant, however, insisted at the trial, and now insists, that the note was not given as a new promise to pay the claims before referred to, or any of them. There was also some evidence on behalf of defendant respecting plaintiff's misrepresentations and conduct in the matter which he insisted misled him and induced him to execute the note in question. The evidence in that regard was, however, not very specific.

After the evidence was all in the court instructed the jury to disregard the defenses of fraud, misrepresentation, and

duress, and submitted the case to them upon the issue of want of consideration.

The court correctly charged the jury that the original debts constituted a sufficient consideration for a new promise to pay them, and that a new promise to pay a discharged debt must be clear and unequivocal to pay the particular debts which were discharged in bankruptcy, and that the debts covered by a new promise must be identified to be those that were discharged in the bankruptcy proceedings. Such, no doubt, is the law. See *Zavelo* v. *Reeves*, 227 U. S. 625, 33 Sup. Ct. 365, 57 L. Ed. 676, Ann. Cas. 1914D, 664,    **1, 2** 29 Am. Bankr. Rep. 493; 1 Collier Bankruptcy, 449; 3 Remington, Bankruptcy, §§ 2714 to 2724. The promise may, however, be oral, and no particular form is necessary. The following have been held sufficient: "I will pay;" "I will settle;" "I will see that you are no loser by me;" "she will have her pay;" "I am willing and able to pay.' Brandenberg, Bankruptcy (4th Ed.) § 1538. The promise must, however, refer to the debt that has been discharged.

The court in this case further charged the jury:

"In order that you may find a verdict for the plaintiff you must find by a fair preponderance of the evidence: First, that the claims of T. H. Nott, Electa Hemingway, and the Nord Clothing Company, which had theretofore been discharged in bankruptcy, had not been paid prior to the execution of said note; second, that at the time of the execution of the note the plaintiff expressly and unequivocally agreed to accept and defendant expressly and unequivocally agreed to make and deliver the note in settlement of, or as a new promise to pay, those specific claims, and no others; third, that the note correctly states the amount then unpaid upon those claims. and is not in excess of the amount unpaid upon those specific claims at the date of said note."

The plaintiff excepted to each of the propositions contained in that instruction separately, and also excepted to the instruction as a whole.

The plaintiff vigorously insists that the instruction does not correctly state the law. It will be observed that the instruction starts out with the statement, "In order that you may find a verdict for the plaintiff you must find," etc. The whole case, so far as the plaintiff is concerned, is therefore

based upon this instruction, and, unless the jury found all three of the propositions in favor of plaintiff, it could not recover.

The first proposition is manifestly faulty because no claim was made in either the pleadings or evidence that the three claims, or any of them, had been paid "prior to the execution of the note." There was evidence that other claims not discharged in bankruptcy proceedings were paid by the defendant, but those, three claims, he specifically alleged in his answer, were discharged in those proceedings. That error in the charge is, however, not so material, and the plaintiff does not seriously insist upon it.

The error in the second proposition is, however, more serious. The jury is there charged that, unless they find "that at the time of the execution of the note the plaintiff *expressly* and unequivocally agreed to *accept* and. the defendant expressly and unequivocally agreed to make and deliver the note in settlement of, or as a new promise to pay, those specific claims, and no others," plaintiff could not recover. (Italics ours.) It is not the law that the promisee must expressly and unequivocally accept the new promise. The acceptance may be implied, and the rule of law that is usually and ordinarily applied is that acceptance may be implied (1) if the promise is beneficial to the promisee, and (2) if he acts upon the promise. In no case, however, is the law to the effect that the promisee must expressly accept     **3** the promise. If such were the law acceptance could rarely be established, since a promisee does not in express terms accept, but does so by merely receiving the evidence of the promise, if in writing, and by afterwards acting upon it. True it is that, where conditions are imposed in the promise—that is, if the promisor offers to pay upon certain conditions—then it is necessary that the promisee accept the conditions. But even then it is not the law that it must be expressly done or in express terms. In view of the foregoing statements of the law in the instruction the court in effect directed the jury to find for the defendant. All that the jury could do was to find for the defendant, since there was

not a word of evidence before them that the plaintiff had expressly accepted the defendant's promise as that promise was evidenced in the note sued upon, although, by reason of plaintiff's conduct after the promise was made in the note, there was indirect evidence beyond a reasonable doubt that it had accepted the promise. The jury could, however, not consider that indirect evidence, since, under the instruction of the court, the latter evidence, however conclusive it might be, could be given no probative force or effect.

Nor is the law correctly stated in the third proposition of the instruction. If the defendant did promise to pay the three claims, then the mere fact that in adding them together a mistake was made as to their aggregate   **4** amount would not vitiate the promise. The material thing was the identity of the claims, and not that they should be added correctly.

All of those errors are vital because the court rested plaintiff's whole case upon any one of them.

It is, however, insisted that, although the instruction be erroneous, still no prejudice resulted because the jury found that the minds of the parties did not meet, in that the defendant did not agree to pay the particular claims in question. Whether he did or did not so promise is, however, one of the principal questions, if not the controlling one, in this case. Moreover, in view that the parties did not reduce the whole of the agreement to writing, it became purely a question of fact. There is—there can be—no doubt that a promise to pay the amounts specified in the note was made in express terms. The note in suit is such a promise, and the defendant solemnly admitted in his answer that he had executed and delivered the same. In considering this phase of the case it must be kept in mind that the only defenses the defendant interposed to the note were that it had been obtained by means of misrepresentation, fraud, and duress, and that there was no consideration for the promise to pay. The court, however, held, as matter of law, that the defenses of misrepresentation, fraud, and duress were not established and therefore those defenses are out of the case.

Nor has the defense of want of consideration been established. When a debt has been discharged in bankruptcy the moral obligation continues precisely the same as though no discharge has been made. The obligation is a continuing one, and continues as long as the debt remains unpaid or is otherwise released. The discharge merely destroys the legal remedy to enforce the debt, but the moral obligation to pay continues in force. That moral obligation is a sufficient consideration for a new promise whenever the promise may be made. The obligation being a continuing one, the consideration continues with it, and just so long as the moral obligation exists the obligation is a sufficient consideration for a new promise. If, therefore, a new promise to pay a discharged debt is made, the defense of want of consideration cannot exist. The question, therefore, and the only question, is, Is there a legal and enforceable new promise? If there is such a promise, that ends the whole case in favor of the alleged promisee; and if there is not, then in favor of the alleged promisor.

Now, the promise to pay may fail because the debts that were discharged in bankruptcy were not sufficiently identified, or the promise may have been obtained by fraud, etc., so that the promise cannot legally be enforced. If, therefore, there are a number of claims that have been discharged in the bankruptcy proceedings, and not all of them are included in the new promise, then those that are included must be specifically mentioned or identified in the new promise. If that is not done it will be impossible to determine what claims are included in the new promise, and hence the promise cannot be enforced. In the case at bar the promise is clear and unequivocal, and, according to plaintiff's evidence, the debts that were intended to be covered thereby are also clearly identified. According to defendant's testimony, however, he did not know just what claims were included in the note, and hence did not promise to pay those particular claims. In view, therefore, that according to the evidence there were claims included in the discharge in the bankruptcy proceedings other than those included in the

note, and that there were other claims still that were not included in the bankruptcy proceedings at all, the question of what claims were included in the new promise is one of the controlling questions which must be determined by the jury. In view, therefore, that the defendant's defenses to avoid the promise which he had confessed had failed, and that there was a dispute between him and the plaintiff respecting the claims that were included or intended to be included in the new promise, that question should have been submitted to the jury instead of the question of consideration. The question of consideration was not a question of fact, but a question purely of law. In view that a promise to pay was made by the defendant, and in view that after failing to avoid that promise, as he attempted to do, it necessarily followed that the unpaid indebtedness was a sufficient consideration for the promise. As before stated, however, the promise may be unenforceable in a proceeding of this kind because of the uncertainty of the precise debt or debts that were intended to be included in the promise. In view that the evidence is conflicting upon that question, it was for the jury to determine under proper instructions. In limiting the jury to these propositions to which reference has been made, the court therefore committed manifest error which is prejudical to the substantial rights of the plaintiff. This conclusion necessarily follows from the fact that it is impossible to determine whether the jury would or would not have found in favor of the plaintiff upon one or all of the questions if they had been correctly charged.

It is contended that the jury found that the minds of the parties did not meet respecting the promise to pay these discharged debts. In view that the court charged the jury that, unless the plaintiff expressly accepted defendant's promise to pay, and that there is no evidence of such an express acceptance, how can this court, or indeed, how can any one, say upon what the jury based its finding? In the case at bar, in view that there was no evidence that the plaintiff had expressly accepted defendant's promise to pay, the jury was compelled to find against the plaintiff upon that issue, which

finding, under the instructions, was determinative of the whole case. Plaintiff, therefore, never has had its day in court upon the principal question of whether the defendant's promise included the discharged debts in question.

As hereinbefore stated, the defendant in his answer also interposed the defense of fraud and misrepresentation on the part of plaintiff, which defense the court withdrew from the consideration of the jury. In view that no cross-assignments of error were filed by the defendant, the ruling of the court is not presented for review in the sense that relief in this proceeding can be granted for any error in that regard. In view, however, that the judgment must be reversed and the case remanded, it becomes our duty under the statute to indicate our views respecting the ruling of the court so as to avoid a repetition of the error if it be such. While it is true that there was no substantial evidence of duress, and hence that defense was properly withdrawn from the jury, and, while the evidence in support of the alleged fraud and misrepresentation is weak and inconclusive, yet the defendant produced some substantial evidence upon that subject which should have been submitted to the jury under proper instructions. Where a case is tried to a jury and there is any substantial evidence upon any material proposition, it is the exclusive province of that body to pass upon the probative force or effect of the evidence and the credibility of the witnesses. This is especially true where there is any substantial evidence upon the question of fraud and misrepresentation, and where different minds might deduce different inferences from the statements of the witnesses. The court, therefore, should have submitted the defense of fraud and misrepresentation to the jury, and permitted them to determine the matter.

In this connection we also desire to state that, while the averments respecting the misrepresentation and fraud in the answer may not be as specific as they might be made, yet they are sufficiently specific to admit evidence upon that subject, and the court should not have withheld those issues from the jury upon the ground that the aver-

ments in the answer were insufficient. Moreover, the averments in that regard are subject to amendment.

In concluding this opinion it is proper to state that an opinion was heretofore handed down in this case affirming the judgment. After the opinion had been filed plaintiff's counsel, within proper time, filed an application for rehearing in which the errors in the instruction hereinbefore referred to were more fully pointed out, and, upon more mature reflection and consideration of the instruction, we have become fully convinced that the errors therein contained are of such a character as necessarily resulted in prejudicing the plaintiff in its rights. Moreover, in view of the nature of the errors, nothing could be gained by a reargument of this case. Indeed, it could only result in prolonging the litigation. We have therefore concluded to dispose of the case at this time. This opinion is therefore substituted for the former one, and will be the opinion published in this case as the opinion of the court.

In this connection we, however, also desire to state that plaintiff's counsel, in his argument in support of his application for rehearing has been guilty of conduct which we cannot condone or pass unnoticed. While no doubt counsel frequently make statements in their applications for rehearing that are uncalled for, and the effect of which is not fully appreciated by them, yet much that is thus stated must be attributed to the zeal of counsel, and in most instances may be overlooked and entirely disregarded by this court. The criticisms of counsel in this case, however, go far beyond mere zeal, and border upon being contemptuous. His criticisms are of a kind which engenders heat, rather than light, and which in their essence impugn the judgment and good motives of the members of this court. Ordinarily, courts strike improper arguments of counsel from the files and refuse to consider them. Such, except in very extreme cases, is not the practice of this court, since to do that, as a rule, merely punishes counsel's clients, who are entitled to justice notwithstanding the breaches of their counsel, for whose conduct the clients are rarely directly responsible. We can, how-

ever, not pass unnoticed the severe and uncalled-for criticisms in this case. Counsel should always remember that the only object and purpose of this court, including all of its members, is to reach a just, a practical, and fair result, based upon and justified by the facts and the established law. That we may at times err in our conclusions is cheerfully conceded. If error occurs, however, it is due entirely to the fact that our judgments and convictions have betrayed us, and not because we intentionally, or even carelessly, have followed the wrong rather than the right course. Convictions are not made to order, but they naturally develop out of the facts of each case as we read them and the law as we understand it. The result in this case clearly exemplified the fact that this court is always willing to hear counsel, and, if error is made apparent, to correct the same at the first opportunity. While counsel therefore, deserves a severe reprimand for his uncalled-for criticisms, yet we trust this admonition will be sufficient, and that he will hereafter refrain from all unnecessary criticism, and will direct his arguments strictly to the matters in issue.

For the reasons stated, the judgment is reversed, and the case is remanded to the district court, with directions to proceed in accordance with the views herein expressed. Neither party to recover costs on appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.